IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

                 Plaintiff,

    vs.                                            CIVIL NO.  11-157 LFG/KBM

FUNDS IN THE AMOUNT OF $3,172.04
from savings account no. **5432 U.S.
New Mexico Federal Credit Union,

                 Defendant,

and

STEVE CHAVEZ,

                 Claimant.

## MEMORANDUM OPINION AND ORDER
## DENYING CLAIMANT'S REVISED MOTION TO SET ASIDE
## DEFAULT JUDGMENT AND STAY EXECUTION OF JUDGMENT

THIS MATTER is before the Court on Claimant, Steve Chavez's ("Chavez"), Revised Motion to Set Aside Default Judgment and to Stay of Execution of Judgment [Doc. 16].  The Court considered the motion, Response in Opposition [Doc. 17] and Claimant's Reply [Doc. 21].  No hearing is necessary.  Pursuant to D.N.M.LR-Civ. 7.6(a), motions are generally resolved on the parties' submissions.  The Court denies the motion for the following reasons.

### Background

This is a civil forfeiture action.  The United States sought forfeiture of funds in the amount of $3,172.04, which were previously seized from the U.S. New Mexico Federal Credit Union

savings account belonging to Chavez.[1]  The United States contended that the funds in that account were the proceeds of criminal activity.  On June 20, 2011, the Court entered default judgment in favor of the United States. [Doc. 13.] On November 16, 2011, Chavez filed this revised motion to set aside default judgment, contending, *inter alia*, that the monies at issue were obtained lawfully and not subject to forfeiture.  [Doc. Nos. 16, 21..]

### Analysis

The government first argues that Chavez lacks standing to move to set aside the default. [Doc. 17, p. 7.  Standing is the right to make a legal claim or seek judicial enforcement of a duty or right.  Black's Law Dictionary, 1413 (7th ed. 1999).

To have standing to set aside a default judgment, a person must have filed a claim and an answer to the petition seeking forfeiture.  United States v. 1988 BMW, ___ F. Supp. 2d ____, 2010 WL 7087593, *3 (S.D. Ohio, June 22, 2010); United States v. One 2001 Cadillac Deville Sedan, 335 F. Supp. 2d 769, 773 (E.D. Mich. 2004) (claimant who did not comply with Rule C(6) by filing a verified claim lacked statutory standing to move to set aside default judgment).

It is undisputed that Chavez neither filed an answer nor a verified claim, and that the time for doing so elapsed.  The rules governing the filing of claims are strictly enforced.  United States v. $230,963.88 in U.S. Currency, 2000 WL 1745130, *3-4 (D.N.H. Nov. 16, 2000).  As Chavez filed neither an answer nor a claim, the Court finds he lacks standing to request that the default be set aside.

---

[1]On August 10, 2010, a seizure warrant was executed on accounts belonging to Chavez at the Bank of America and the U.S. New Mexico Federal Credit Union.  The amounts seized were $101,048.79 from the Bank of America and $3,172.04 from the U.S. New Mexico Federal Credit Union.

Chavez argues, however, that he did not file an answer because of personnel changes occurring in his attorney's office, and that he is ready and able to file an answer and claim. Thus, the inference is that while he currently lacks standing, if the Court were to set aside the default, he would file an answer and claim, thereby acquiring standing.

Even if the Court were to find that a promise to file an answer and claim is sufficient to confer standing, the Court still cannot set aside the default unless it concludes at least two things: (1) there was "excusable neglect" that compels the Court to overlook the failure to file an answer; and (2) that Chavez has a meritorious defense. *See* Marcus Food Co. v. DiPanfilo, __ F.3d __, 2011 WL 5084997, *10 (10th Cir. 2011) (movant "bears the burden of demonstrating excusable neglect and, only if he meets this burden, of showing a meritorious defense." (*citing* Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1445 (10th Cir.1983)). *See also* Williams v. Swanson, 57 F. App'x 784, 788 (10th Cir. Jan. 9, 2003) (given court's conclusion that claimant failed to show excusable neglect, it was not required to address arguments related to meritorious defense argument).

## A. **Excusable Neglect.**

The leading case on excusable neglect is Pioneer Inv. Servs. Co. v. Brunswick, Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993). *See also* Marcus Food Co., 2011 WL 5084997, *10 (*relying on* Pioneer Inv. Servs. Co.).

The Pioneer case notes that while a court has a wellspring of equitable authority that will allow it to overlook a late filing, that authority is not unlimited. The determination of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Id. at 395, 113 S. Ct. 1489. The Pioneer case set out four factors that courts should consider:

3

(1) the danger of prejudice to the [non-moving party],

(2) the length of the delay and its potential impact on judicial proceedings,

(3) the reason for the delay, including whether it was within the reasonable control of the movant, and

(4) whether the movant acted in good faith

Id.

Taking these factors into consideration, the Court must first determine whether the United States would suffer prejudice. Indeed, should the Court set aside the default, the United States would be required to unscramble an egg. Proceeds of civil forfeitures are returned to law enforcement agencies to assist with carrying out their law enforcement functions, *e.g.,* investigative and other crime-fighting purposes. These proceeds are generally divided, on a percentage basis, among the various law enforcement agencies that participated in the investigation of the criminal activity giving rise to the forfeiture, and the forfeiture itself.

The Court granted a default judgment to the United States in June 2011, six months ago. It is unknown whether those seized funds were already paid out to various law enforcement agencies. If those agencies, based on the availability of forfeited funds, incurred obligations or spent funds conveyed to them, it would be difficult for them to reimburse or otherwise to pay back monies which were conveyed. Moreover, even if the funds were not paid out to law enforcement agencies as is typical, the United States would nonetheless be put in the position of accounting for, accumulating, and reimbursing money appropriately seized. Under the best of circumstances, attorney time and agency resources would have to be devoted to reversing decisions properly made. Thus, there is a degree of prejudice that would befall the non-moving party should the Court grant the motion.

The second <u>Pioneer</u> factor concerns the length of the delay.  This is not a case where a party overlooked the filing of a claim and answer for several days or several weeks.  To the contrary, the forfeiture petition was filed on February 16, 2011 [Doc. 1].  Thus, to date, almost one year has elapsed without an answer or a claim.  This significant ten-month delay weighs against Chavez's request.

The third factor concerns the reasons for the delay.  The Court is apprised that a change of personnel in counsel's office occasioned the delay.  That statement, however, might justify a brief delay, but certainly not a delay of ten months.  Additionally, this third factor requires consideration of whether the reason for the delay was within the control of the moving party.  In this case, it was.

Stated differently, Chavez does not argue that the United States was responsible for the delay in filing a claim or answer.  Indeed, the entirety of the delay is attributed to Chavez or his agents.  Moreover, Chavez did not fail to act because he was unaware of the forfeiture proceeding.  Chavez was served with notice of the forfeiture on March 30, 2011 [Doc. 6].  Thus, he knew that the government was seeking civil forfeiture.  Not only was Chavez on notice of the civil forfeiture by reason of service of process, but also his change of plea proceeding, wherein he pled guilty to a drug trafficking offense, called for the forfeiture of the funds in question.  <u>United States v. Chavez</u>, 10-CR-3454 [Plea Agreement, Doc. 22 in 10cr3454].

Additionally, and separate from the personal service of process and the related criminal prosecution, the United States published its proverbial "notice to the world" by Notice of Publication of the forfeiture in a paper of general circulation [Doc. 5 in 11cv157].  The Notice advised that the government was seeking a civil forfeiture of funds, and that claimants were required to make a claim and file an answer to the petition by a date certain.  Chavez neither filed a claim nor an answer.

The last <u>Pioneer</u> factor is whether movant acted in good faith.  It is difficult, if not impossible to conclude the motion is filed in good faith because the forfeiture of funds was part of the guilty plea proceeding.  Chavez pled guilty to Count 1 of the Indictment, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C)–possession with intent to distribute cocaine. [*See* Doc Nos. 20, 22 in 10cr3454].  Chavez stated in his plea agreement:

> By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty.  I recognize and accept responsibility for my criminal conduct.  Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt. I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:
>
>> On July 21, 2010 in Bernalillo County a search warrant was executed at Stevo Automotive Body & Detail at 4516 2nd Street, NW, Albuquerque, New Mexico 87107.  416 grams of cocaine were found in Steve Chavez's pant pocket.
>>
>> On August 10, 2010, the United States, pursuant to a warrant, seized $101,048 from the Bank of America. An additional $3,172 was seized from New Mexico Federal Credit Union.
>>
>> On January 5, 2011, 194 grams of cocaine were located in the ceiling of Stevo Automotive Body & Detail at 4516 2nd Street, NW, Albuquerque, New Mexico 87107.

[Doc. 22, Plea Agreement at 2-3, in 10cr3454].

Further, in his plea agreement, Chavez agreed to a forfeiture.

> The Defendant agrees to forfeit, and hereby forfeits, whatever interest the Defendant may have in any asset derived from or used in the commission of the offense(s) in this case.  The Defendant agrees to cooperate fully in helping the United States (a) to locate and identify

6

> any such assets and (b) to the extent possible, to obtain possession
> and/or ownership of all or part of any such assets.  The Defendant
> further agrees to cooperate fully in helping the United States locate,
> identify, and obtain possession and/or ownership of any other assets
> about which the Defendant may have knowledge that were derived
> from or used in the commission of offenses committed by other
> persons.

[Id. at 7, ¶ 13].

So, too, in the Presentence Report, prepared for the sentencing phase of that prosecution, the

U.S. Probation Office specifically set out the reasons why the seized funds were the proceeds of

criminal activity.  The factors included the following:  Chavez had no employment other than the

purported auto shop; neither he nor the business had any license to operate; no business records were

found with purchase or sale inventories, customer lists, inventory documents, accounts owing or

receivables; there was no evidence of cash flow to support Chavez's life style, no payroll records;

and a very minimal report of gross business receipts.  Specifically, the Presentence Report stated in

paragraph 12:

> On August 10, 3010, a seizure warrant was executed on two bank
> accounts belonging to Steve Chavez which resulted in the seizure of
> $101,048.79 from the Bank of America and $3,172 from New
> Mexico Federal Credit Union.  This money was believed to be
> derived from drug proceeds due to the lack of labor department
> records, no business license, the lack of business activity/records
> found during the search of the business, the seizure of substantial
> quantities of various controlled substances, the minimal amount of
> reported gross business receipts, and recent deposit amounts in even
> dollar and hundred dollar increments.

The U.S. Probation Office concluded in paragraph 15:

> Chavez was a drug supplier at his own discretion.  There is no
> indication at this point, Chavez was working under the direction of
> another or directing others.  It appears he maintained his business for
> distributing controlled substances as several controlled substances
> were located by law enforcement at his business on two occasions, he
> had no business license, and labor department records reflected he

had no wages since July of 2005. Additionally, surveillance was conducted at the business revealing several people would arrive at this business and leave within five minutes which is a common indiction of drug trafficking. Also there was a lack of business activity/records found during the search of the business and there was a minimal amount (approximated less than $27,200) of reported gross business receipts to the New Mexico Taxation and Revenue Department. On July 20, 2010, a firearm was located at Chavez's residence, but there was no information connecting the firearm to the drugs. No drugs were located at Chavez's residence.

Those items found on Chavez, coupled with the presence of large amounts of drugs and cash on Chavez and drugs hidden in the ceiling of the business, were consistent with drug dealing. His bank deposits were frequently in large numbers of $100 bills. The U.S. Probation Office stated that the funds in the Bank of America account and the U.S. New Mexico Federal Credit Union account were proceeds of criminal activity.

Chavez filed no objections to the Presentence Report and did not seek to challenge any of the factual representations. Chavez's failure to challenge the factual representations in the Presentence Report constitutes acquiescence in the statement of facts. *See* U.S. v. Powell, 320 F. App'x 842, 844 (10th Cir. Apr. 07, 2009) (failure to challenge factual findings in PSR precluded subsequent challenge).

After due consideration of the four Pioneer factors, the Court cannot state that there was excusable neglect to warrant setting aside the default judgment. Nor can the Court conclude that Chavez now acts in good faith by asserting a legitimate source for the seized funds.

## B.   **Meritorious Defense.**

Even if the Court were to exercise its equitable authority and determine that the delay was excusable, the motion to set aside could still not be granted unless there was a valid defense. *See* Marcus Food, 2011 WL 5084997, *10 (movant "bears the burden of demonstrating excusable

neglect and, only if he meets this burden, of showing a meritorious defense.") In this case, Chavez contends that there was a legitimate source for the funds seized from his account.

Chavez now argues:

> The plea in that matter [<u>United States v. Chavez</u>, 10-CR-3454 JH] as negotiated between Claimant's counsel and Assistant United States Attorney Rhonda Backinoff specifically excluded the funds at issue in this case in order to allow Claimant to pursue his claim in this forfeiture action.

[Doc. 21, at 3].

Chavez is mistaken. Nowhere in the Plea Agreement, and nowhere in the plea colloquy (Colloquy referred to in Doc. 20 of 10cr3454, "FTR HONDO @ 10:24 AM") which the Court listened to in its entirety,[2] is there any mention that the forfeited funds would be returned, were excluded from forfeiture, or that Chavez was preserving a right to challenge forfeiture at some time in the future.

## Conclusion

Having considered the pleadings, and having judicially noticed the Plea Agreement and plea colloquy in 10cr454 JH, the Court determines that: (1) Chavez lacks standing; (2) Chavez failed to demonstrate excusable neglect; (3) Chavez lacks a meritorious defense to the forfeiture proceedings; and, (4) the funds in question were to be forfeited to the United States as part of Chavez's conviction for the drug offense.

---

[2]The Court may take judicial notice of records in related proceedings. *See* <u>Gee v. Pacheco</u>, 627 F.3d 1178, 1191 (10th Cir. 2010) (Court may "take judicial notice of court records" in related proceedings). *See also* <u>St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.</u>, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may take judicial notice of its own records as well as those of other courts, particularly in closely-related cases). All preliminary criminal proceedings before the district's magistrate judges are recorded by the magistrate judge's courtroom deputy and constitute the verbatim record of the proceedings.

IT IS THEREFORE ORDERED that Chavez's Revised Motion to Set Aside Default

Judgment and to Stay Execution of Judgment is DENIED.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
United States Magistrate Judge